President Clinton Good morning. Good morning, Your Honor. Eves v. Stinson. Mr. Pappas. Yes, Your Honor. May it please the Court? My name is Peter Pappas and my brother, John Pappas, and I have the distinct honor of representing Jason Stinson, the appellant in this case. I don't believe I've ever in 25 years had a brother team argue a case. Well, hopefully we make a good team, Your Honor. Actually, the preliminary injunction, we flipped it around. He's doing rebuttal. Your Honor, we'd like to reserve seven minutes for rebuttal time. Your Honors, there are three main issues which require reversal of the lower court's decision in this case to grant a permanent death penalty injunction against my client for life, preventing him from any involvement whatsoever in any capacity whatsoever in a tax preparation business, and forcing him to disgorge nearly a million dollars in alleged ill-gotten gains. The lower court erred in finding that the United States of America proved that Mr. Stinson engaged in fraud, aided in embedded fraud, or encouraged fraud in any way. There is no evidence on the record of that. The lower court also erred in finding that the United States presented a reasonable approximation during its case in chief of ill-gotten gains earned by Mr. Stinson. No approximation, reasonable or otherwise, was ever presented at trial. Can I ask you a quick question about the first of those two things before we talk about disgorgement? Yes, sir. As I'm looking at the statutory hooks here for the injunction, is it necessary that there be proof of fraud? Yes, Your Honor. In this case, yes, because the United States government alleged fraud under all three counts. Count one was the 7408 injunction, which clearly requires fraud on its face. Count two was 7407, which on its face does not require fraud, but the government alleged that the reason 7407 requires an injunction in this case is because of Mr. Stinson's repeated, rampant business model of fraud, rampant fraud in their complaint. I understand, but this isn't a criminal case, and if you allege something not necessary to your case, you can prove less of it and what's necessary to your case and still prevail in a civil case. That's the difference between criminal and civil, or a difference. Your Honor, I don't disagree with you in general there, but in this case, we have a case where the United States government, over 155 times in its complaint that was published on its website and press releases issued all over the country, branding our client a fraud, a rampant fraud, a thief. If we issue an opinion saying we don't need to decide whether that was proven or not, should have been branded or not, because it's not necessary, there's your relief. You can't say just because they alleged he was, they have to prove it. That's not the way civil pleading works. Perhaps, Your Honor, but they didn't prove the requirements under the other statutes anyway, and I'll get into that in a minute. You said you're going to focus on three and you've got two. What's the third one? The third issue, Your Honor, is the lower court erred in failing to entertain Mr. Stinson's claims for sanctions in this case. The court issued no findings of fact, no conclusions of law with regard to our claim for sanctions. We specifically laid out, with references to the record, instances where the government multiplied the proceedings and misled this court as to the law, the facts. I would definitely leave that one to last. You want to proceed with the other two right now? Yes, Your Honor. Regarding the evidence produced at trial, there were four categories of evidence the government introduced. One were summaries of audits with audit reports underlying them as exhibits. These were summaries of expert testimony of trained, specially skilled IRS auditors, trained and knowledgeable in the area of tax law as to whether dependents are allowable, earned income credit is appropriate, commuter miles or business miles are appropriate. They stated in their joint trial brief and throughout this case that they had no experts. They're not allowed to, they were stopped from submitting these summaries of audits that contain expert opinion. And when we asked to depose the auditors, they objected saying it's irrelevant. They have nothing relevant to add to this case. Did you depose them or the court turned you down on it? The court turned us down, believing the government that the audit opinions of these auditors was irrelevant. And again, that's another example where the government misled the court. At the time that we challenged and asked for, to depose these auditors, the government was representing to the court that audits are irrelevant. Only the taxpayer testimony is relevant. The audits shed no light on preparer conduct. They repeatedly made this representation. Their own witnesses at trial represented to the court that the summary of audits say nothing whatsoever about preparer conduct. And this is a case not about inaccurate or accurate returns. This is a case about preparer conduct. For the government to admit that its own audits say nothing about preparer conduct and then submit these audits ostensibly as evidence of some kind of preparer conduct and then use— Why was that ostensibly as evidence of preparer conduct as opposed to being openly evidence of fraudulent returns, whether the preparer knew about them or not? We'll make that inference later. I mean you first got to show that the returns weren't accurate. The government can't prove its case, any of its allegations. They're all pointless unless there were false returns. Correct, Your Honor. And the audits go to that, do they not? Yeah, but the government didn't prove that by submitting summaries that it admitted said nothing about preparer conduct. Forget preparer conduct. If the government doesn't prove that the returns were false, then that's the end of the case. So they can prove the returns are false and put in evidence to show the returns are false without having a problem about whether the preparer knew about it or not. That's another aspect of the case. Yeah, I would agree with that, Your Honor. If you show, for example, that on the Schedule C businesses you had 5,501 of those filed and 130 of them reported a profit, I'm sorry, a profit, a loss, and the others reported profit. In other words, you have 97.5% of the returns showing losses and 2.5% showing gains or profits. That's evidence that's relevant to whether or not the returns filed by his businesses were false, is it not? No, Your Honor. Well, yes. 97.5% of businesses in this country lose money during that particular tax year? There's two interesting points about that, and I don't disagree with what Your Honor is saying. First of all, one of the allegations in this case is not that Mr. Stinson's preparers understated the Schedule C income, but they overstated the Schedule C income to help these taxpayers get an earned income credit because you have to have earned income. Different aspect of the case, but if you have 97.5% of the returns, the audit you're complaining about shows that 97.5% of the returns on those Schedule C businesses, Schedule C is relating to the businesses, showed loss, and that's a relevant fact. It's a relevant fact regardless of what you later show the preparer knew or didn't know. Yeah, I would agree, Your Honor, but it says nothing about prepare. Alone, it says nothing about preparer conduct. That's fine, but that doesn't make it inadmissible. I thought you were arguing it was inadmissible. Oh, I am arguing it's inadmissible. Well, I think you're wrong about that for the reasons I explained. Well, it's also, Your Honor, it's also inadmissible because it's expert opinion testimony. Different issue. There are other reasons it's inadmissible. All right. We will give your brother seven minutes to reply and go now to Mr. Hutter. Thank you, Your Honor. May it please the Court, Randolph Hutter for the United States. Your Honors, in granting the preliminary injunction in this case, the district court and this court on appeal determined that the government was likely to prevail in seeking a permanent injunction. At trial, the government did meet that burden. The district court and this court were correct in its opinion, and Mr. Stinson has done nothing on this appeal to demonstrate any error or abuse of discretion in particular in the district court. Did the government call any taxpayers to testify in this case? Quite a few, Your Honor. There are 18 witnesses that the government called at trial, and there are, I believe, around 40 or 50 depositions as well. And the taxpayers, one after another, testified that they looked at their returns at the trial. They did not recognize numbers that were on them. They don't know where the preparers got those numbers. They testified that the preparers basically made those numbers up over and over and over again. And as the district court said, on return after return, the evidence of false Schedule As and Schedule Cs and education credit claims and filing status and charitable deductions, we can go on and on. The evidence just piled up and piled up that there was at a minimum total incompetence here, and we can get an injunction for total incompetence under 7402 because this is interfering with the enforcement of the laws of the Internal Revenue Code. Answer his argument that because you allege fraud, you've got to prove it regardless of what the statute says. We proved everything, all of the factors in those statutes. Of course, 7402 is very broad and does not require that any fraud be shown, and we alleged a cause of action under 7402. Under 7408, the statute that was in . . . I understand that's not his argument. Well, it probably is, but . . . I'm going through the elements. I'm asking you to respond to it. Yes. Okay, you allege fraud. You've got to prove fraud. Yes. You do? No, we also alleged . . . Respond to his argument that because you allege fraud, you must prove it. Well, yes, based on our allegations of fraud, we have to prove fraud. Sure, and we did, but we also alleged . . . So if we find no fraud or that you didn't prove fraud, we can't affirm under 7402? No, absolutely not. Tell us why. I'm sorry, Your Honor. We alleged a cause of action under 7407, for example, and 7407, the causes of action, the statements there, we said they prepared incompetent returns. We said that they didn't know what they were doing and that they prepared these returns. Your argument is in that part of the complaint, you didn't allege fraud. When we . . . Yes, Your Honor. In alleging . . . Yes, that's your argument. In alleging a cause of action under 7407, we allege a cause of action under all of 7407. We didn't say we have a cause of action under 7407 just because of fraud. We said we have a cause of action because you also violated the due diligence requirements of 6695, because under 7407, you also violated the requirements under statute of 6694. Those are elements of the statute, and we alleged and we argued and we proved that all of those elements were met, that these people . . . you get an injunction under 7402, of course, for very broad reasons. You get an injunction under 7407 if you've shown knowingly understatement of tax, even reckless understatement of tax. 7408, of course, does require fraud. It does, and we proved fraud. On page 33 of the district court's opinion, the badges of fraud are listed out that the district court found. I would say that there are even additional badges of fraud that the district court didn't mention, such as the fact that the preparers . . . there's evidence in the case that the preparers hid the fees they were charging to the taxpayers, did not inform them at a minimum of the fees they were charging, and also that the preparers were working on a commission based on how much in the way of fees were obtained by the stores. And basically, this was run as largely a pyramid scam. But just so I'm clear, under 02 and 07, setting 08 aside, 02 and 07, there are sub-aspects of those statutes that do not require you to prove fraud? Absolutely, Your Honor. And you can travel under those alone? Yes, absolutely. Yes, but we broadly proved fraud as well. The district court found there was fraud, and there is widespread fraud. They testified that the taxpayer customers testified that they had no idea where the numbers on the returns came from, that the preparers simply made them up. In defense, Mr. Stinson did not present any of the preparers with returns and say, where did these numbers come from, except to ask them, did you make up any numbers? No. Well, all they can say is the taxpayers provided the numbers. The district court correctly believed the taxpayers went over and over and over again. The taxpayers came in. They know nothing about tax returns. They don't know. What evidence did Mr. Stinson put on in this case? Mr. Stinson put on a handful of three or four preparers to testify that they were not trained to produce fraudulent returns, that they had no intent of producing fraudulent returns, and that— Did those three—I think it was four. In any event, those witnesses he presented, did they testify, I didn't make up any numbers, those were the numbers given me by the taxpayers? Yes, they testified that. Yes, they did, but— The judge didn't have to believe them. The judge did not have to believe them. And, very importantly, Mr. Stinson did not bring into evidence any returns that were properly prepared, not a single one. You would think that he's got all the case files of all the customers that he's ever done. He's got copies of all of the returns. And yet, the numbers bear out what the district court found is that return after return has these abuses and that Mr. Stinson didn't produce returns rebutting them. He could have perhaps come up with an equal number of returns that we put in the file, in the record, saying that these are perfectly correct and there's really not rampant fraud here or misconduct, but he didn't do that. And, of course, we didn't have to prove that it was on absolutely every return. We proved that it was on every return that we audited, pretty much. Exhibit 7071 shows that the audit results show that over a million dollars in tax liabilities was missing, should have been paid, understated on only around 230 returns. So the numbers are overwhelming, and they did not rebut that evidence with evidence of their own. Go ahead. Well, I was about to shift subjects. Me, too, about disgorgement. Yeah, I want to talk about disgorgement. Absolutely. And specifically the calculation issue. I'm not so much concerned that disgorgement, maybe the Chief is, is an available remedy, but I do have some concern about the calculation of it, even under the reasonable approximation standard. Can you help us with that? Yes. The numbers that the district court found in our favor came from the returns that Mr. Stinson himself prepared in 2011 and that included Schedule A and Schedule C and, I believe, education credits. And we showed, as the district court said, that on return after return there were abuses on those. And also with regard to the other tax years, the court found that there were over 800,000 in fees with regard to other returns concerning Schedules A and Schedule C. And we showed those fees related to those returns, and those were a specific amount of fees that we could get from the service that they used to process the fees. And if there's anything missing in the calculation, then, as I referred to earlier, it was incumbent upon Mr. Stinson to come forward with returns and say, oh, no, no, no, no, you can't possibly include fees for returns that included Schedule A because here are 60, 50, 100, 150 returns that include Schedule A that have no incorrect statements at all. So it was their burden to come forward and say there's at least something wrong here, and they didn't do that. They simply challenged the methodology. So you say, and I understand this, that, look, we don't have to prove fraud for purposes of disgorgement on a return-by-return basis, but then are you essentially shifting the burden to him to disprove fraud on a return-by-return basis? What exactly happens when you've shifted the burden to him? What does he come back with and say? He says here are 50 returns that what? That show that we prepared the returns correctly. We came forward with as much in the way, I mean, we could have had a trial go on for six months where we introduced every tax return, every customer that ever came into the shops, and every preparer that ever did a return, and that, of course, would go on for an endless amount of time practically, and the district court had enough cumulative evidence there. And in our summaries and in our audit reports to say, okay, there are these many Schedule A's in all of these returns and these many Schedule C's, and these are all abusive. Now, Mr. Stinson, please come forward with something. Tell us that those returns are not abusive. Whether that's legally permissible or not is a different matter. In other words, Calvo, your closest analogy, I think, is the SEC case where the defendant didn't keep records or kept such obscure records you couldn't figure out what's going on. And we held, I think correctly, and it's the law of the circuit regardless, we held that where the defendant had so obscured matters that calculating it was impossible, you don't have to calculate the actual loss or fraudulent amount. What you calculate instead is the gross proceeds. But you're taking that a step further in saying that even if they haven't obscured it, it's too big a hassle and would take too long to go through 14,000 returns. And I think that was the district court's call, and I don't think that's an abusive discretion to say that I'm going to stop this after a certain point and say I don't need all this cumulative evidence from one side. Let me see something from the other side. Well, it's not really cumulative evidence if it's evidence of what some of the unlawful gain was. That's not cumulative. All right. You haven't heard evidence about what the rest of the unlawful gain was. That's true. Well, I think we introduced a perfectly representative sample of what was going on. And no, we didn't introduce every taxpayer. Was it randomly drawn sample? I mean, perfectly legitimate sample says to me you took every 14th return or every 27th return or you took one return and then skipped 27 and then skipped an even number, et cetera. That's how statisticians do it. But that's not what you did, was it? No, that's not exactly what we did. The returns that were used to extrapolate, how did you select them? The IRS, number one, knows what to look for because this is a rampant problem among preparers. They know where the abuses are going to occur. The abuses are going to occur on Schedules A, Schedule C, and with various types of credit and all. All right. Did you find some Schedules A and C selected randomly, randomly but for the fact they had those schedules in them, and then find out what the loss or overstatement, fraud, whatever you want to call it, was on those and then multiply that by the number of returns that you could tell had an A or a C in it? Is that how you calculated it? Well, yes, but this discouragement award is based on the fees chart. Right, right. Yes, but we did calculate. But if you pick 100 A and C returns and it's obvious that in 90% of them there was overstatement or fraud or something like that, then you take that 90% figure and you multiply it by the total fees in the A and C cases. Yes. And that's how you get the proceeds of the ones that arguably were overstated, invalid, or fraudulent. Is that what was done? Or did you just take the total amount of returns he got and multiply by that? We took the total number of returns we found with those errors, but also the fee records for absolutely every return were incomplete. So you're going back Calvo on that. And also the district court found that this was replete on return after return. I would also like to emphasize that our evidence was geared toward meeting the terms of 7408, 7402, 7407, and 7407 grants an injunction if we find that a certain behavior is repeated and continual. Then you get a permanent injunction. I thought we weren't so much discussing the injunction remedy as we were the disgorgement remedy. Exactly. I was just trying to put it in context of how we gathered evidence. But we also analyzed the evidence to see. Did this come from one particular witness, or was this just as part of your argument to the court? Well, the summaries are contained in the record in Exhibits 767, 768, 769, and 771, I believe, through Revenue Agent Poole, Ricky Poole, who sort of oversaw the audits that were done by the technical compliance officers and tabulated the results and put together the exhibits that showed that how much in the way of overstatement, underpayment of liability, was due to these particular problems on the returns, these particular schedules. He explained how he got to that point. Yes, he did. Yes, he did. He explained that. I see my time is up. If I could just quickly say that it's February, it's tax season again, this is a problem that is going on even as we speak, and disgorgement and injunction are very important tools that the government must use in order to try to curtail this behavior. Thank you. John Pappas. Good morning. May it please the Court. My name is John Pappas. First, disgorgement. There was absolutely no testimony, absolutely no exhibits introduced by the plaintiff government of any ill-gotten gains in this case, period. The only calculation of any ill-gotten gain was presented over objection, of course, by opposing counsel during closing argument. Let me ask you this, counsel. If it was stipulated or found, and you were bound by the finding, that there were 100 fraudulent returns, fraudulent returns, is the fee paid for those 100 returns preparation ill-gotten gains? Probably not the entire fee. It depends upon what portion of that fee is ill-gotten, whether it was received by the particular defendant involved, and it would have to be calculated. But would that be a reasonable approximation, sufficient to shift the burden to you to disprove it? When is it made? It has to be made in the evidence it was not done. But the Chief's question is if it were proven in the evidence or stipulated, or you're bound by the finding. Sure. If, hypothetically speaking, they introduce an evidence and said, these 12 tax returns we contend are fraudulent, and theoretically they put in proof that they were fraudulent, then they could calculate, usually by expert testimony, some reasonable approximation. Actually, they might not even need a reasonable approximation. Let me just tell you this. The Supreme Court can tell me that I can't consider the entire proceeds that you got for filing a fraudulent return, and I will follow that decision, or the en banc court. But that is absurd. If they prove, stipulated, whatever, and it's not hypothetical from a mere perspective, that this was a fraudulent return, then I think every penny and every dollar of the proceeds ought to be disgorged. The fees charged for that return. For that return. Okay. I understood you to say you got to apportion it. Oh, come on. Well, there's some cases that say that, but just so you understand, Judge, your hypothetical has nothing to do with this case. Hence the term, hypothetical. Thank you. So if you weigh on this, what you want is this court to send it back down and put on all those witnesses, I suppose. No. No, as a matter of law, they did not carry their burden of proof on disgorgement, and this court should reverse on that issue. You're saying that the whole thing was bad. Absolutely. Absolutely. We were entitled to dismissal as a matter of law. Going too quickly, 6702 and, I mean, 702 and 704, the non-fraud statutes. Every element of those statutes, they pleaded and argued repeatedly, were violated, whether they called it reckless, incompetent, unreasonable position, or whatever, because of the fraud of my client. They pleaded it and argued it constantly. If you look at their post-trial findings of fact, conclusions of law, Exhibit 218 and the record below, they spent paragraphs talking about EITC, and the model of EITC, their earned income tax credit, was fraud. It wasn't incompetence. It wasn't. When they came before you, Your Honor, for a plea. So, hold on. Just wait. Explain to us now, in response to the Chief's question to your brother, why that matters as a matter of law. The statute doesn't require them to prove fraud. If they used the term as a legal term of art or colloquially or whatever, the statute doesn't require them to prove fraud. Your Honor, quite frankly, I disagree with Judge Carnes. On that issue. Respectfully. So, fine. But what's your authority for the proposition that they must prove fraud in a civil case? I think in a civil case, a plaintiff is bound, judicial omissions, they're bound to prove what they pleaded. It's important to understand, they did not do this accidentally. So, if they pleaded all these returns were filed on Tuesday, they'd have to prove that? If it was material to the case, yes. Well, it's not material. We've already gone over that. Fraud's not required under those other two statutory provisions. How is it material to the case other than the fact? I understood you to argue that if they pleaded, it's material to the fact. Hence, my hypothetical again. If they pleaded it all happened on Tuesday, they have to prove that because it's material because they pleaded it? That doesn't make sense. Well, Your Honor, with due respect, I believe they're judicial omissions. Let me explain why it's material. It goes to discovery. It goes to the pleadings. At trial, we actually ask one of their I.S. agents, Shields, question. Okay, but I need to follow up. Since apparently something did come out, how do you determine whether a particular return is grossly, negligently prepared by tax preparers, or EITC due diligence requirements without reviewing the customer file? Opposing counsel, trial. Objection, Your Honor. Relevance. The court sustained. The objection is sustained. We're not allowed to ask questions about what they are now backdooring in, in this fraud case. They got a preliminary injunction solely on fraud. The peculiar thing in this case is on the pleadings, the mischief that over pleading does often is it gets heard by the jury. It's hard to unring the bell by the jury. Then you have jury instructions and you've got to confront the issue about whether to include it in the instructions or not. When you've got a pure bench trial, none of that really matters because we have a strong presumption that judges decide the case according to the law. The judge doesn't have to do jury instructions when the judge is doing the findings of fact and conclusions of law. If we're defending a case based upon fraud for two years or more, and we're asking questions at trial just in case they're trying to backdoor a non-fraud case, and then they, the government, says that's not relevant to the case, what choice do we have? Our hands are tied. They put you to a lot of work and you ought to write a letter complaining, but that doesn't mean that they don't get the remedy the law entitles them to even if they don't prove fraud. I respectfully disagree, Your Honor. I would like to go to the third element. I have only a few seconds left. We'll give you a couple minutes. Thank you. First of all, just so the court understands, all the audits were totally inadmissible evidence. One of the reasons they have misrepresented to the courts numerous times material facts and law. First example, the Shields' testimony and her non-official audits. They got that six, seven months after discovery was closed. Ms. Shields testified these are not IRS documents. These are not the legal process of the IRS. They argued successfully, and the court relied upon it, that these were business records prepared in the normal course of IRS business. Their own witnesses testified that is not true. The only reason why we did this was because the attorneys for the plaintiff against Mr. Stinson in the litigation needed to obtain a random sample that they did not have, and we want to gather this double hearsay of taxpayers and this expert testimony of her and other auditors that never testified at trial to be used against Mr. Stinson. Completely, totally for the litigation against Mr. Stinson. That is a deliberate, intentional misrepresentation of the facts and the law. They actually argued, and they argue on appeal, that Form 4549 that she used was used in a normal legal process of the IRS. She testified that's absolutely untrue. She testified at trial that's untrue. She wrote rough draft because she didn't want anyone to think that form was being used as the legal process in the normal business practice of the IRS. With regard to all the other audits commissioned by Mr. Poole, they argue that they were not primarily done, motivated, or conducted to gather evidence against Mr. Stinson or any relation to litigation whatsoever. Well, that's a false statement, a material fact. Mr. McClellan, the supervisor of Mr. Poole, testified. No, Mr. Poole's only job is to investigate taxpayers, not taxpayers. He sought the audits for one purpose and one purpose only, primarily to gather evidence, if not solely, but he used the word primarily to gather evidence against Mr. Stinson. And yet they falsely argue that all those audits are admissible evidence as a business record, trustworthy, trustworthy business record, not in any way, they say, related to the litigation. Thank you, Mr. Powell. Thank you, Your Honors. We'll take that case under submission.